Adam P. Segal, Esq.
Nevada Bar No. 6120
Christopher M. Humes, Esq.
Nevada Bar No. 12782
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone: (702) 382-2101
Facsimile: (702) 382-8135
Email: asegal@bhfs.com
Email: bcloveland@bhfs.com
Email: chumes@bhfs.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE CONSTRUCTION INDUSTRY AND LABORERS JOINT PENSION TRUST FOR SOUTHERN NEVADA; THE CONSTRUCTION INDUSTRY AND LABORERS JOINT PENSION TRUST FOR SOUTHERN NEVADA,<br><br>Plaintiffs,<br><br>vs.<br><br>REGINALD DUNLAP, an individual,<br><br>Defendant. | Case No. 2:18-cv-02163-JAD-VCF<br><br>**Order Granting Motion for Default Judgment and Entering Final Judgment**<br><br>ECF No. 7 |

Before the Court is the Plaintiffs', the Board of Trustees of the Construction Industry and Laborers Joint Pension Trust for Southern Nevada (the "Trustees") and the Construction Industry and Laborers Joint Pension Trust for Southern Nevada (the "Plan"), Motion for Default Judgment against Defendant Reginald Dunlap ("Dunlap"). Default having been entered against Defendant, the Court having reviewed the Plaintiffs' Motion, received oral argument at the November 25, 2019, Hearing, being fully advised, and good cause appearing, the Court now makes the following findings of facts and conclusions of law.

19991662                              1

## I. Findings of Fact

1. Plaintiffs are the Board of Trustees of the Construction Industry and Laborers Joint Pension Trust for Southern Nevada and the Construction Industry and Laborers Joint Pension Trust for Southern Nevada.

2. The Board of Trustees is made up of fiduciaries of the Plan for purposes of the Employee Retirement Income Security Act of 1974 ("ERISA").

3. The Plan is an employee benefit plan as defined in ERISA.

4. The Defendant Reginald Dunlap is an individual who is a resident of the State of Nevada.

5. Dunlap was a Participant in the Plan accruing pension benefits to his account.

6. Dunlap applied for payment of pension benefits from the Plan in December 2007.

7. The Plan offers two types of default pension options: (1) a Single Life Annuity for unmarried participants; and (2) 50% Husband-and-Wife Pension for married participants.

8. Dunlap elected the Single Life Annuity option which requires a spouse's consent when the participant is a married individual.

9. In his application, Dunlap executed a certification under the penalty of perjury stating that he was not married at the time he submitted his application for pension benefits.

10. Dunlap was not truthful on his application to the Plan, as he was married to Tammie Davis at the time Dunlap submitted his application for payment to the Plan.

11. When Dunlap applied for pension benefits 2007, he had been married to Tammie Davis for approximately 9 years.

12. Dunlap did not register his wife under his health plan to further conceal his marriage.

13. Dunlap also reported that he was single to the Internal Revenue Service while he was actually married, presumably for additional financial gain.

14. After paying Dunlap these pension benefits for nearly ten years, the Plan was presented with a request for information regarding a Qualified Domestic Relations Order

("QDRO"). It was then that the Plan realized that Dunlap was not single, but married, and had been married since 1998, despite the fraudulent statements on his pension application.

15. Due to fraudulent information included on his application, the Plan paid Dunlap an amount to which Dunlap was not entitled.

16. The Plan's terms state that providing fraudulent information "shall be sufficient reason for denial, suspension or discontinuance of benefits under the Plan[.]"

17. Dunlap first began receiving pension benefits on January 1, 2008, in the amount of $3,234.04 per month.

18. On July 1, 2017, the amount was decreased to $1,617.02, due to the pending QDRO.

19. In total, Dunlap has received $389,701 in pension payments from the Plan, to which he is not entitled due to his fraudulent representations on his pension application.

20. Additionally, the Plan's 10-year average annual investment return rate was 5.7%. This rate was used to calculate the interest owed because if the Plan retained these amounts, the Plan would have realized 5.7%, or $156,057, in interest.

21. Under the Plan document, the Plan is also permitted to obtain its attorney's fees and costs for having to bring an action to collect the amounts owed. The Plan incurred $3,748 in reasonable attorney's fees (rounded to the nearest dollar).

22. With the addition of interest and attorney's fees to the total amount of illicitly received benefits Dunlap was paid, Dunlap owes the Plan $549,506.

23. Ultimately, Dunlap made a false representation on his pension application as to his status as an unmarried individual

24. At the time of his misrepresentation, Dunlap was aware that he was indeed married, and knew the statement on his pension application was false.

25. Dunlap intended to induce the Plan and the Trustees to rely on his fraudulent statement so that he would receive a higher pension benefit that he was entitled.

26. The Plan and the Trustees justifiably relied on Dunlap's fraudulent statement as he stated that he certified he was unmarried under the penalty of perjury.

27. The Plan's and Trustees' justifiable reliance on Dunlap's fraudulent misrepresentation was the direct and proximate cause of the Plan's payment to Dunlap of unentitled benefits.

28. If any findings of fact are properly conclusions of law, they shall be treated as if appropriately identified and designated.

## II. Conclusions of Law

1. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. U.S.*, 323 U.S. 1, 12 (1944)).

2. Therefore, this Court takes as true each of the facts outlined in the Plaintiff's Complaint.

3. In accordance with ERISA, spousal consent is required to elect any form of pension other than a joint survivor annuity. 29 U.S.C. § 1055(c)(2).

4. Moreover, the Plan requires a married participant to obtain the consent of a spouse for any other form of pension other than a 50% Husband and Wife Pension.

5. If a beneficiary made a false statement in the benefit application, the plan document allows the plan to disqualify the beneficiary from pension benefits.

6. The payments made to Dunlap are not permitted by the terms of the Plan, and are also not permitted by ERISA. Dunlap is therefore required to repay the pension benefits illegally received due to his fraudulent statement.

7. The Plan is also entitled to assert an equitable lien against the pension payments provided to Dunlap. *See* 29 U.S.C. 1132(a)(3); *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1091 (9th Cir. 2012).

8. In order to assert an equitable lien by agreement, the Ninth Circuit has established three elements that must be satisfied in an ERISA action: (1) there must be a promise by the beneficiary to reimburse the fiduciary for benefits paid under the plan; (2) the reimbursement agreement must specifically identify a particular fund from which the fiduciary will be

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

1  reimbursed; and (3) the funds must be within the possession and control of the beneficiary. *Id.* at
2  1092-93 (citing *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363 (2006)).

3      9.    The Plan satisfies all of the elements here: (1) The Plan terms require reimbursement of any benefits obtained due to fraudulent statements; (2) The Plan terms also identify the specific funds, the pension overpayments made due to fraudulent statements. As shown above, the Trustees have calculated an identifiable, specific amount that has been paid to Dunlap; and (3) the Plan sent these payments to Dunlap.

    10.    Dunlap is also liable to the Plaintiffs for fraud. Established Nevada common law requires the following elements to be proven in order to establish a fraud claim.

    11.    Established Nevada common law requires the following elements to be proven in order to establish a fraud claim:

> [1] that the defendant made a *false representation* to him, [2] *with knowledge or belief* that the representation was false or without a sufficient basis for making the representation. Further, [3] the plaintiff must establish that the defendant *intended to induce the plaintiff to act or refrain from acting* on the representation, and [4] that the plaintiff *justifiably relied* on the representation. Finally, [5] the plaintiff must establish that he was *damaged* as a result of his reliance.

*Blanchard v. Blanchard*, 108 Nev. 908, 911, 839 P.2d 1320, 1322 (1992) (quoting *Epperson v. Roloff*, 102 Nev. 206, 210–11, 719 P.2d 799, 802 (1986)) (emphasis in original).

    12.    The admitted allegations in the Plaintiffs' Complaint meet all the elements above: (1) Dunlap made the false representation that he was unmarried; (2) Dunlap knew he was married Tammie Davis; (3) Dunlap intended to induce the Plaintiffs into paying a higher amount for a single life annuity, contrary to the Plan's terms and ERISA; (4) Dunlap made his fraudulent statements accompanied by a certification that he was telling the truth under the penalty of perjury, and the Plaintiffs justifiably relied on that statement; (5) As explained above, the Plaintiffs were damaged in the amount of $549,506, consisting of fraudulently obtained pension payments, lost investment interest and attorney's fees and costs.

    13.    Additionally, other federal courts have found ERISA participants to be liable for fraud in very similar overpayment scenarios. *See Trustees of AFTRA Health Fund v. Biondi*, 303

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

F.3d 765 (7th Cir. 2002); *Geller v. Cty. Line Auto Sales, Inc.*, 86 F.3d 18 (2d Cir. 1996). As such, this fraud claim brought by the plan is cognizable under ERISA.

14. Thus, the Plaintiffs meet all the elements of fraud against Dunlap

15. Even though each of the Plaintiffs claims are met by virtue of the Dunlap's admissions due to his default, the Federal Rules of Civil Procedure allow this Court to discretionarily grant default judgment only when certain factors are met.

16. Specifically, Federal Rule of Civil Procedure 55(b)(2) permits a court to grant default judgment against a defendant who has failed to plead or defend an action. To determine whether a default judgment is appropriate, courts may consider the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).

17. As to the first element of the *Eitel* test, the Trust Funds will suffer prejudice if default judgment is not entered because they "'will likely be without other recourse for recovery' if default judgment is not entered in their favor." *Tr. of the Bricklayers & Allied Craftworkers Local 13 Defined Contribution Pension Trust for S. Nev. v. Tile Concepts, Inc.*, No. 2:16-cv-01067-GMN-GWF, 2016 WL 8077987 (D. Nev. Dec. 7, 2016) (quoting *Liberty Ins. Underwriters, Inc. v. Scudier*, 53 F. Supp. 3d 1308, 1318 (D. Nev. July 8, 2013)). Dunlap fraudulently obtained pension benefits contradictory to the Plan's terms and ERISA. Dunlap has refused to pay these amounts back to the Plaintiffs and failed to participate in this litigation. Therefore, because the Plaintiffs will have no recourse against Dunlap unless default judgment is granted, the first *Eitel* factor favors the entry of default judgment.

19991662                                    6

18. The second and third *Eitel* factors address the merits and sufficiency of a plaintiff's claim. *Eitel*, 782 F.2d at 1471-72. The undisputed facts in this case demonstrate that Dunlap was perfectly aware that he was married at the time he submitted his pension application, but lied to achieve a higher pension benefit. As discussed above, as a result of having default entered against him, Dunlap has admitted these facts, which should be taken as true. The second and third *Eitel* factors favor the entry of default judgment.

19. The fourth *Eitel* factor concerns the damages at stake in the case. The damages in this case are reasonable and well-documented, based on the Plaintiffs' actuary's calculations. The Plaintiffs only seek to be made whole due to the losses incurred caused by Dunlap's fraud. This factor also favors the entry of default judgment.

20. Regarding the fifth *Eitel* factor, there is no possibility of dispute concerning the material facts. Because Dunlap has had a default entered against him, the allegations in the complaint are deemed admitted and taken as true. *See Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. U.S.*, 323 U.S. 1, 12 (1944)). Moreover, the evidence shows that Dunlap misrepresented that he was unmarried, even though the records indisputably show that he was in fact married. Therefore, the fifth *Eitel* factor also favors the entry of default judgment.

21. The sixth *Eitel* factor demonstrates that excusable neglect is not a factor here. The Complaint was filed on November 9, 2018. (ECF No. 1) Dunlap failed to plead or otherwise defend the suit, resulting in the entry of default. Moreover, Plaintiffs have had extensive conversations with Dunlap and his representative regarding this suit, yet Dunlap never elected to participate in the litigation. Dunlap is on notice that the suit is filed and pending in this Court. In short, there is no evidence that Dunlap's default was the result of excusable neglect. The sixth *Eitel* factor favors the entry of a default judgment

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

22. The seventh and final *Eitel* factor also weighs in favor of entering default judgment. Although "should be decided on the merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, when defendants fail to answer the complaint, a decision on the merits is "impractical, if not impossible." *Anzalone*, 2018 WL 3004664 *7 (citing *PepsiCo v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. Dec. 27, 2002)). "Thus, 'the preference to decide a case on the merits does not preclude a court from granting default judgment." *PepsiCo*, 238 F. Supp.2d at 1177 (quoting *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314 (N.D. Cal. Feb. 13, 1996)). Again, the Plaintiffs have no recourse to obtain relief other than bringing this suit. Therefore, this factor also weighs in favor of the entry of a default judgment.

23. The damages set forth by the Trust Fund and its corresponding calculations are supported by the plan documents.

24. If any conclusions of law are properly findings of fact, they shall be treated as if appropriately identified and designated.

Accordingly, with good cause appearing and no reason to delay, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the motion for default judgment **[ECF No. 7] is GRANTED**; **FINAL JUDGMENT** is entered against Defendant Reginald Dunlap for fraudulently obtained pension payments ($389,701), interest ($156,057) and attorney's fees ($3,748) **in the total amount of $549,506,** and the Clerk of Court is directed to **CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
Dated: December 18, 2019

Respectfully submitted by:

BROWNSTEIN HYATT FARBER SCHRECK, LLP

/s/ Christopher M. Humes
_____
Adam P. Segal, Esq., Nevada Bar No. 6120
Christopher M. Humes, Esq., Nevada Bar No. 12782
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614

*Attorneys for Plaintiffs*

19991662

8